IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VALARIE STOVALL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-10-2836 |
| SUNTRUST MORTGAGE, INC., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This putative class action was originally filed by Valerie Stovall ("Plaintiff" or "Stovall") in the Circuit Court for Baltimore City on September 3, 2010, asserting claims arising out of the denial of Stovall's mortgage loan modification application and a foreclosure action that was ultimately rescinded. More to the point, Plaintiff's claims stem from Defendant SunTrust Mortgage, Inc.'s ("Defendant" or "SunTrust") alleged failure to abide by the provisions set forth in the United States Department of the Treasury's Home Affordable Modification Program ("HAMP").[1] Stovall alleges violations of Maryland's Consumer Protection Act, Maryland's Consumer Debt Collection Act, Maryland's Mortgage Fraud Protection Act, and various common law causes of action. Presently pending before this Court is Defendant's Motion to Dismiss, Plaintiff's Motion to Strike Offer of Judgment, and Plaintiff's Motion for Leave to File Supplement to Plaintiff's Opposition to Defendant's Motion to Dismiss. This Court has reviewed the record, as well as the pleadings and

---

[1] The background and purpose of the HAMP program is thoroughly described in *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *1 (D. Md. Aug. 4, 2011), a recent opinion issued by this Court.

exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). This Court finds that, with the exception of Count Three, alleging a violation of Maryland's Mortgage Fraud Protection Act, Stovall has failed to state a cause of action on which relief may be granted. Accordingly, for the reasons that follow, Defendant's Motion to Dismiss (ECF No. 20) is GRANTED IN PART and DENIED IN PART. Additionally, Plaintiff's Motion to Strike Offer of Judgment (ECF No. 22) is DENIED, and her Motion for Leave to File Supplement (ECF No. 38) is GRANTED.

BACKGROUND

Plaintiff's Complaint stems from a failed loan modification application and subsequent foreclosure action instituted against her. Stovall is the owner of the residence located at 16831 Cavalry Drive, Williamsport, Maryland 21795 (the "Property"). Am. Comp. ¶ 12. The mortgage loan (the "Loan") at issue is secured by a lien on the Property, and is owned by the Federal National Mortgage Association ("Fannie Mae"). The Loan was evidenced by a Note and secured by a Deed of Trust. *See* Def.'s Mot. to Dismiss, Exs. 1 (Note) and 2 (Deed of Trust). Although the Loan is owned by Fannie Mae, it is currently serviced by Defendant SunTrust Mortgage, Inc. ("SunTrust").

In August of 2009, Stovall began struggling to pay her mortgage payments and became delinquent on the Loan. Am. Compl. ¶ 41. Shortly thereafter, Stovall contacted SunTrust and sought a loan modification under the Home Affordable Modification Program. *Id.* SunTrust requested, and Stovall sent documentation regarding her income and expenses to SunTrust for evaluation under HAMP. As recently explained by this Court:

> The HAMP loan modification process occurs in two steps. First, the mortgage servicer determines whether the borrower is eligible to participate in HAMP. If a mortgage servicer determines that the borrower is eligible for HAMP, the servicer may offer the borrower a three-month Trial Period Plan ("TPP"), during which the borrower pays reduced mortgage payments. If all of the conditions of the TPP Agreement are satisfied, the borrower may then proceed to step two of the process, at which point he or she is offered a permanent loan modification.

*Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *1 (D. Md. Aug. 4, 2011).

Stovall claims that she received approval to enter the HAMP program which indicated that she had been approved to enter into a TPP plan on April 7, 2010. Am. Compl. ¶ 42. Specifically, Stovall alleges that she "entered into a contractual agreement for a TPP with SunTrust." *Id.* ¶ 44. While Plaintiff has not attached a copy of the TPP to her Amended Complaint, SunTrust included a copy signed only by Stovall as Exhibit 3 to its Motion to Dismiss, and Stovall does not allege that she ever received a signed executed copy of the agreement from SunTrust. *See* Def.'s Mot. to Dismiss, Ex. 3, ECF No. 20-4. As the very top of the document (the "TPP Agreement"), makes clear, the "contractual agreement" signed by Plaintiff Stovall is only "Step One of Two-Step Documentation Process." *Id.* at 1. Moreover, of particular importance to this litigation, the TPP Agreement contains the following language:

> I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. *This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature. . . .*

> The Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, *but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates,* and no new notice of default, notice of intent to accelerate,

notice of acceleration, or similar notice will be necessary to continue the foreclosure action. . . .

*I understand that this Trial Period Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until* (i) I meet all of the conditions required for modification, (ii) *I receive a fully executed copy of a Modification Agreement,* and (iii) this Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan.

TPP Agreement, *Id.* pp. 1-3 (emphasis added).

Apparently without receiving a fully executed copy of the TPP Agreement, Stovall nevertheless began making reduced monthly mortgage payments to SunTrust in April and May of 2010. Am. Compl. ¶¶ 44-45. After making her second payment, Stovall learned that SunTrust authorized substitute trustees Howard Bierman, Jacob Geesing, and Carrie Ward (collectively, "BGW") to institute a foreclosure proceeding against her in the Circuit Court of Washington County, Maryland. *Id.* ¶ 46. Upon learning of the impending foreclosure action, Stovall contacted BGW and was told that "as long as [she] was under the modification program an order for reinstatement would be sent by SunTrust and upon approval of modification[,] [BGW] would cancel the foreclosure." *Id.*

Between May 17, 2010 and June 28, 2010, Stovall claims that she called SunTrust "numerous times and was told by each representative she spoke to 'not to worry' and when she got a [foreclosure] sale date to call [SunTrust] . . . and SunTrust would stop any foreclosure sale, since [Stovall] was in the TPP." *Id.* ¶ 54. On June 28, 2010, Stovall learned that a foreclosure sale had been scheduled for July 9, 2010. *Id.* ¶ 56. On that same day, Stovall again contacted SunTrust and was told that SunTrust "would make a note to

[Stovall's] file and that they were still reviewing [her] application [for loan modification] and SunTrust would set aside the foreclosure." *Id.* ¶ 57.

On July 6, 2010, Stovall received a telephone call from a SunTrust representative requesting additional documentation in connection with SunTrust's first step TPP Agreement review. *Id.* ¶ 58. Thereafter, Stovall faxed SunTrust the requested information. *Id.* Stovall did not hear back from SunTrust until after the July 9, 2010 foreclosure sale had occurred and she received an eviction notice. *Id.* ¶ 59. On July 14, 2010, Stovall called SunTrust and was told that her request to put off the foreclosure sale was denied.

In response to the foreclosure sale, Stovall retained counsel and filed exceptions to the sale. *Id.* ¶ 63. In response, SunTrust moved to rescind the foreclosure sale but did not immediately dismiss the foreclosure action in the Circuit Court of Washington County. *Id.* ¶ 64. SunTrust eventually did move to dismiss the state court action—a request that was granted on December 3, 2010. *Id.* ¶ 68.

Although in one paragraph of her Amended Complaint Stovall claims that she "never received anything in writing from SunTrust that she was denied her permanent HAMP modification," *id.* ¶ 61, she later acknowledges that on January 8, 2011, she received "a letter . . . informing her that she had been denied for a loan modification" under HAMP, *id.* ¶ 70. Stovall claims that the denial letter failed to comply with Fannie Mae's HAMP servicing guidelines. *Id.* ¶ 71.

Stovall filed this action against SunTrust on September 3, 2010 in the Circuit Court for Baltimore City, Maryland. SunTrust removed the case to this Court on September 13, 2010, based on diversity jurisdiction. Stovall filed an Amended Class Action Complaint on

January 19, 2011, and Defendant filed the pending motion to dismiss on February 14, 2011. In Counts One through Four, Stovall alleges that SunTrust (1) violated Maryland's Consumer Debt Collection Act by engaging in unfair and deceptive trade practices, making misrepresentations, and failing to disclose material facts relating to Plaintiff's HAMP application; (2) violated Maryland's Consumer Debt Collection Act by filing debt collection foreclosure proceedings without complying with the prerequisites of the Fannie Mae HAMP program and in relying on bogus and insufficient documents submitted by BGW; (3) violated Maryland's Mortgage Fraud Protection Act by making misstatements, misrepresentations, and omissions during the mortgage lending process; (4) breached the TPP Agreement by instituting foreclosure proceedings against borrowers under consideration for TPP loan modifications and by authorizing foreclosure sales prior to sending written denials of loan modification. As an alternative to her breach of contract claim, in Count Five, Stovall alleges a promissory estoppel claim as an alternative theory of recovery. In Count Six, Stovall seeks declaratory and injunctive relief.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet v. Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937,

1949 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950.

ANALYSIS

## I. **Preliminary Matters**

### *1. Plaintiff's Motion to Strike Offer of Judgment*

On February 28, 2011, SunTrust served an Offer of Judgment under Federal Rule of Civil Procedure 68 on Stovall for an undisclosed monetary sum that encompassed compensatory damages and attorneys' fees. SunTrust avers that the sum offered was significantly less than the full amount of Stovall's claimed damages. Def.'s Opp'n at 2, ECF No. 30. The offer expired on March 17, 2011. Stovall did not accept SunTrust's offer, and moved to strike the offer as a procedural ploy designed to "pick off" the named class representative. Pl.'s Mot. to Strike at 2-3, ECF No. 22. Stovall's Motion to Strike Offer of Judgment is without merit. As this Court recently noted:

> [B]ecause Rule 68(b) states that "[e]vidence of an unaccepted offer is not admissible except in a proceeding to determine costs," an unaccepted offer may not be filed with the Court until that proceeding. *See* Fed. R. Civ. P. 68(a)-(b). Because Keyco has not filed its offer with the Court, there is nothing to "strike." *See, e.g., McDowall v. Cogan*, 216 F.R.D. 46, 52 (E.D.N.Y.2003) ("[T]here is nothing to strike here, as an offer of judgment is not filed with the court until accepted or until offered by a defeated party to

> prove costs."). *Tillman v. Calvary Portfolio Servs.*, LLC, 2009 U.S. Dist. 18467
> (D. Ariz. Feb. 27, 2009). Accordingly, the motion to strike must be denied.

*Buechler v. Keyco, Inc.*, No. WDQ-09-2948, 2010 WL 1664226, at *3 (D. Md. April 22, 2010).

As Rule 68(b) plainly states "[e]vidence of an unaccepted offer is not admissible except in a proceeding to determine costs." Fed. R. Civ. P. 68(b). Accordingly, because SunTrust has not yet filed an unaccepted offer of judgment in a proceeding to determine costs, there is nothing to strike. *Buechler*, 2010 WL 1664226, at *3.

Plaintiff asks this Court to distinguish its holding in *Buechler* on the ground that the plaintiff in *Buechler* had not yet sought class certification prior to the expiration of the offer of judgment. In other words, Stovall argues that this Court should strike SunTrust's offer because it is an attempt to frustrate the class action by mooting the claims of the named plaintiff representative. While there is some authority holding that an offer of judgment in the full amount of a named class action plaintiff's claim cannot moot a class action, *see Weiss v. Regal Collection*, 385 F.3d 337, 340 (3d Cir. 2004), SunTrust has argued that its offer "in no way included the complete relief sought by Stovall." Def.'s Opp'n at 3, ECF No. 30. Moreover, the cases cited by Stovall in support of her motion to strike all concern class actions brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which sets a $1,000.00 statutory limit on damages. *See, e.g.*, *Smith v. NCO Fin. Sys.*, 257 F.R.D. 429, 431 (E.D. Pa. 2009) (noting that "Courts in this district have restrained any use of an offer of judgment that may undercut the Rule 23 class mechanism, particularly in the context of FDCPA class actions"). Here, by contrast, Stovall's requested damages greatly exceed $1,000.00, and similarly exceed the undisclosed amount offered by SunTrust. Accordingly, Stovall's Motion to Strike Offer of Judgment (ECF No. 22) is denied.

## 2. Plaintiff's Motion for Leave to File Supplement

On August 11, 2011, and after responding to the Defendant's Motion to Dismiss, Stovall filed a Motion to File a Proposed Supplement to Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 38). Essentially, Stovall seeks to bring to this Court's attention a recent opinion issued by Judge Blake of this Court, *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, concerning issues similar to those to be decided in this case. Stovall also seeks to introduce a Consent Order to Cease and Desist that SunTrust entered into with the Board of Governors of the Federal Reserve System. *See* C&D Order, ECF No. 38-3. Stovall claims that the *Allen* case and the Cease and Desist Order demonstrate the plausibility of her allegations against SunTrust.

SunTrust does not directly oppose the admission of Plaintiff's supplemental materials, but instead responds with argument concerning the weight this Court should afford those materials. Specifically, SunTrust distinguishes the *Allen* case, and argues that the Cease and Desist Order has no bearing on the validity of Stovall's claims. Moreover, SunTrust requests that this Court consider seven other cases decided after SunTrust filed its Motion to Dismiss where district courts have examined TPP Agreements identical to the one at issue in this case and have rejected claims asserted by borrowers that are incompatible with the terms in the TPP Agreements. *See* Def.'s Supplemental Authority, ECF No. 39-1.

While the cases cited by the parties are certainly relevant and helpful to this Court, the Cease and Desist Order submitted by Stovall is of limited use as it contains no findings of fact relevant to the present case, and by its own terms, precludes Stovall from claiming

any rights, benefits, or remedies under it. *See* C&D Order at 35. Nevertheless, Plaintiff's

motion for leave to file supplemental materials (ECF No. 38) is granted.

## II. <u>Notice-and-Cure Provision in the Deed of Trust</u>

As a preliminary matter, SunTrust argues that Stovall's Amended Complaint should

be dismissed in its entirety because she did not comply with a notice provision in the Deed

of Trust on the Property. As previously mentioned, the Loan at issue in this case is secured

by a Deed of Trust, and the notice provision in the Deed of Trust states:

> Neither Borrower nor lender may commence . . . any judicial action . . .that
> arises from the other party's actions pursuant to this Security Instrument . . .
> until such Borrower or Lender has notified the other party (with such notice
> given compliance with the requirements of Section 15) of such alleged breach
> and afforded the other party hereto a reasonable period after the giving of
> such notice to take corrective action.

Deed of Trust at 12, ECF No. 20-3.

"Notice," under Section 15 of the Deed of Trust means written notice. *See id.* at 10

("All notices given by Borrower or Lender in connection with this Security Instrument must

be in writing."). Here, it is clear that Stovall did not provide notice in accordance with the

Deed of Trust. Plaintiff's Amended Complaint simply does not allege that she provided

written notice to SunTrust prior to instituting this lawsuit. In her opposition memorandum,

Stovall argues that because she contacted SunTrust over the telephone in connection with

her TPP loan modification application, she therefore satisfied the notice requirement. *See*

Pl.'s Opp'n at 15, ECF No. 21. First, the telephone calls described in the Amended

Complaint do not indicate that Stovall made any reference to potential causes of action

arising from any "breach" of the TPP Agreement—she certainly expressed her

dissatisfaction with the foreclosure action instituted against her, but it is far from clear

whether her calls to SunTrust constitute any sort of notice contemplated by the Deed of Trust. Second, and more importantly, a telephone call is not written notice and cannot comply with the Deed of Trust's notice requirement.

Apparently recognizing this deficiency, Stovall also argues that after retaining counsel to file exceptions to the foreclosure sale on the Property, her counsel served pleadings on SunTrust thereby satisfying the notice provision in the Deed of Trust. However, the pleadings that Stovall attaches to her opposition memorandum indicate that they were not served on SunTrust, but rather, on BGW in their capacity as a substitute trustees. This Court finds that serving exceptions to a foreclosure sale on a substitute trustee does not satisfy the notice provision of the Deed of Trust executed between Stovall and SunTrust.

Two recent opinions issued by the United States District Court for the Eastern District of Virginia have examined this precise issue, and have dismissed borrower's claims in their entirety for failure to comply with the notice provisions in the deeds of trust. *See Niyaz v. Bank of America*, No. 10-0796, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011); *Johnson v. Countrywide Home Loans, Inc.*, No. 10-1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010). Not only did those two cases address the same issue, but they considered the identical Deed of Trust notice provision at issue in this case. However, another recent opinion issued by the Eastern District of Virginia, *Schmidt v. Wells Fargo Home Mortgage*, No. 11-059, 2011 WL 1597658, at *3 (E.D. Va. April 26, 2011), has noted that "several courts have acknowledged that identical notice-and-cure provisions do not extend to claims based on deceptive business practices." *Id.* (collecting cases); *see also Gerber v. First Horizon Home Loans Corp.*, No. 05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006) (noting that

"[this] cause of action, which involves allegations of deceptive business practices, clearly exists independent of any contract between the parties"). As the majority of Stovall's claims involve allegations of deceptive business practices, this Court finds that the notice-and-cure provision in the Deed of Trust does not warrant dismissal of the case.

## III.  Plaintiff's Substantive Counts

### 1.  Count One: Maryland's Consumer Protection Act

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," and lists fourteen categories of proscribed conduct. MD. CODE ANN., COM. LAW § 13-301. Under the MCPA, "an individual may only bring a claim if she can 'establish the nature of the actual injury or loss that he or she allegedly sustained as a result of the prohibited practice.'" *Allen*, 2011 WL 3425665, at *10 (quoting *Lloyd v. General Motors Corp.*, 916 A.2d 257, 280 (Md. 2007)).

Stovall alleges that SunTrust violated the MCPA by making false statements, deceptive and misleading representations, and failing to disclose relevant information with regard to SunTrust's review of Stovall's TPP application for a permanent loan modification. Am. Compl. ¶¶ 54-70. Because Stovall's MCPA claim sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Allen*, 2011 WL 3425665, at *9 (citing *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009)). Rule 9(b) sets forth a heightened pleading standard for fraud claims, as it requires that "a party must state with particularity the circumstances constituting fraud or mistake." These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

*Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999). A failure to comply with this rule is treated as a failure to state a claim under Rule 12(b)(6). *See id.* at 783 n. 5.

Here, Stovall has not satisfied the heightened pleading standard of Rule 9(b). Her allegations of false statements and misrepresentations on the part of SunTrust amount to nothing more than statements consistent with the first step—the HAMP eligibility review— of the two-step HAMP loan modification process. For example, Stovall states that after the foreclosure proceeding was instituted against the Property, she contacted SunTrust's substitute trustees, BGW, who "falsely represented" to Stovall that "as long as [she] was under the modification program an order for reinstatement would be sent by SunTrust and *upon approval of modification* [BGW] would cancel the foreclosure." Am. Compl. ¶ 46. Therefore, despite Stovall's protestations that she was entitled to a permanent loan modification, SunTrust and BGW's actions merely indicated that Stovall's application was still under review, and consistent with the plain language of the TPP Agreement, she would not ultimately receive a loan modification unless "(i) [she met] all of the conditions required for modification, (ii) [she received] a fully executed copy of a Modification Agreement, and (iii) [the] Modification Effective Date has passed." TPP Agreement at 2. Stovall also alleges that "numerous times" she called SunTrust and was told "not to worry" about the impending foreclosure because she was "in the TPP." Am. Compl. ¶ 54. This bare allegation, devoid of any particularity whatsoever, cannot satisfy the heightened pleading standards of Rule 9(b). Once Stovall received the foreclosure sale date, she contacted SunTrust again and was told that SunTrust "would make a note to [Stovall's] file and that

[SunTrust] [was] still reviewing [Stovall's] application and SunTrust would set aside the foreclosure." Am. Compl. ¶ 57. While Stovall claims that SunTrust said it would set aside the foreclosure, she was also clearly aware that her application was still under review, and she was not yet entitled to a permanent loan modification.

In *Allen v. CitiMortgage, Inc.*, this Court denied a motion to dismiss a MCPA claim, holding that the plaintiff in that case pled with "sufficient particularity a claim that CitiMortgage sent false or misleading statements to the [plaintiffs]." 2011 WL 3425665, at *9. However, in contrast to the conclusory allegations of misleading and false statements asserted by Stovall, the plaintiffs in *Allen* identified at least six contradictory written communications that had the "capacity, tendency, or effect of deceiving or misleading them about their status under the TPP program and whether their mortgage was in default. *Id.* Here, Stovall has not pled "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), let alone the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [s]he obtained thereby," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999). Accordingly, SunTrust's Motion to Dismiss is granted as to Count One.

### 2. Count Two: Maryland's Consumer Debt Collection Act

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. MD. CODE ANN., COM. LAW §§ 14–201 to 14–204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out

of a consumer transaction," *id.* § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14–202(8). This Court has previously construed the level of knowledge required under the MCDCA and has held that "[c]onsidering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law." *Spencer v. Hendersen–Webb, Inc.,* 81 F. Supp. 2d 582, 594 (D. Md. 1999). In addition, the "knowledge" requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Kouabo v. Chevy Chase Bank, F.S.B.,* 336 F. Supp. 2d 471, 475 (D. Md. 2004) (citing *Spencer,* 81 F.Supp.2d at 595).

The thrust of Stovall's MCDCA allegations is her assertion that "[b]y filing debt collection foreclosure proceedings and/or conducting foreclosure sales without first complying with [ ] the prerequisites of the Fannie Mae HAMP program or (ii) based upon bogus or insufficient papers and affidavits through [BGW], [SunTrust] has asserted a claim with knowledge that the right [to foreclose] does not exist." Am. Compl. ¶ 98. As a preliminary matter, and as will be discussed later in this Memorandum Opinion, because the HAMP program does not confer a private right of action, *see infra* Part III.4, Stovall may not sue to enforce its guidelines. Therefore, even assuming SunTrust did not abide by HAMP's guidelines, and that BGW filed improper foreclosure documents, SunTrust's *right* to foreclose came about when Stovall defaulted on her mortgage. SunTrust's alleged failure to abide by HAMP's guidelines, and BGW's alleged filing of improper foreclosure documents

do not change the fact that Stovall defaulted on her mortgage in August 2009.  *See* Am. Compl. ¶ 41.  As a result, Stovall has not shown that SunTrust claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist.  Accordingly, SunTrust's Motion to Dismiss is granted as to Count Two.

### 3. Count Three: Maryland's Mortgage Fraud Protection Act

In Count Three, Stovall alleges that SunTrust engaged in mortgage fraud in violation of the Maryland Mortgage Fraud Protection Act ("MMFPA"), MD. CODE ANN., REAL PROP. § 7-401 *et seq.*  In its broadest sense, the statute simply states "[a] person may not commit mortgage fraud."  *Id.* § 7-402.  Relevant to the present action, the statute defines mortgage fraud as:

> (1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

> (2) Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

> (3) Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

> . . . ; or

> (6) Filing or causing to be filed in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Md. Code Ann., Real Prop. § 7-401(d)(1)-(6).  The statutory definition of the "mortgage lending process" includes "(i) [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan; and (ii) the notarizing of any document in connection with a mortgage loan." *Id.* § 7-401(e)(2).

Although SunTrust seeks to curtail the breadth of the statute to only encompass mortgage loan closings, the plain language of the statute clearly countenances post-closing servicing activities[2]—activities that SunTrust clearly engaged in here.  While this Court has already dismissed Stovall's MCPA claim on the ground that she failed to plead with particularity any facts tending to show that SunTrust made false or misleading statements in connection to Stovall's loan modification application, her allegations regarding SunTrust's substitute trustee's use of fraudulent affidavits is sufficient to plead a plausible violation of the MMFPA.  Stovall has alleged, that in connection with the foreclosure instituted by SunTrust's substitute trustee, BGW filed and had notarized various documents with deliberate misstatements as to the documents' true signatories.  *See* Am. Compl. ¶¶ 48-50. These allegations are sufficient to plead a violation of the MMFPA.  Accordingly, SunTrust's Motion to Dismiss is denied with respect to Count Three.

---

[2] This Court, in *Benson v. Candor Mortg. Corp.*, No. L-10-481, 2010 WL 1741379 (D. Md. April 27, 2010), dismissed a mortgage fraud claim against a loan servicer on the ground that the servicer played no part in the closing of the mortgage loan process.  As the plaintiff alleged that the fraud occurred *at the closing*, only the defendant servicer's conduct at the closing was relevant.  *Id.* at *4-5. Here, however, the fraud complained of by Stovall allegedly occurred after the closing in connection with the foreclosure proceedings instituted against her, and this Court finds that post-closing activities are clearly contemplated by the Maryland Mortgage Fraud Protection Act.

### 4. Count Four: Breach of Contract

While the Defendant has not explicitly argued that Stovall lacks standing to bring this suit, SunTrust argues that to the extent Plaintiff seeks to enforce the Home Affordable Modification Program guidelines, her breach of contract claim is barred insofar as HAMP does not provide a private right of action to enforce its guidelines. In this regard, SunTrust argues that the entire thrust of Stovall's complaint, and her breach of contract claim in particular are premised on SunTrust's alleged violation of HAMP procedures.

As this Court recently noted, "[n]umerous courts have held that borrowers do not have an express or implied right of action under HAMP." *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *4 (D. Md. Aug. 4, 2011). Indeed, courts have "universally rejected" claims asserting entitlement to permanent loan modifications under HAMP itself. *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 10-0670-HEH, 2011 WL 1306311, at *3 (E.D. Va. April 1, 2011). Recognizing this, Stovall argues that her breach of contract claim is not an explicit attempt to enforce HAMP's guidelines, but rather, stems from the TPP Agreement and SunTrust's failure to extend her a loan modification. As the United States District Court for the Eastern District of Virginia recently noted: "Plaintiff is not the first federal-court claimant to assert entitlement to a permanent HAMP modification. These actions have taken a variety of forms based on different legal theories, none of which have fared well in the courts." *Bourdelais*, 2011 WL 1306311, at *3. More specifically, with regard to a breach of contract claim arising from the TPP Agreement, the *Bourdelais* court stated:

> Several courts have flatly rejected this contention. In *Vida v. One West Bank, F.S.B.*, the homeowner-plaintiff contended that her breach of contract claim was based on her TPP agreement and common-law contract principles, independent of HAMP. No. 10–987–AC, 2010 WL 5148473, at *4 (D. Or. Dec.13, 2010). The court dismissed her claim, holding that she "fail[ed] to state a cause of action independent of HAMP," because "the alleged offer to modify came about and was made wholly under the rubric of HAMP, as were [her] alleged actions in acceptance of the offer." *See id.* at *4–5. The court in *Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 WL 250501, at *5 (N.D. Ill. Jan.25, 2011), adopted *Vida's* analysis and similarly dismissed the plaintiff's purported breach of contract claim.

*Id.* at *4.

Regardless, this Court has held that "even if a private right of action does not exist under HAMP, [a plaintiff] may be permitted to assert a breach of contract claim stemming from the TPP Agreement as long as they have stated a proper claim in their amended complaint." *Allen*, 2011 WL 3425665, at *5.

Here, Stovall has not stated a plausible claim for breach of contract. In Maryland, "to state a claim for breach of contract, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation." *Id.* (citing *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 994 A.2d 430, 442 (Md. 2010)). Despite repeatedly asserting that the TPP Agreement that Stovall signed was an "offer" extended by SunTrust that Stovall "accepted" upon signing, *see, e.g.*, Am. Compl. ¶¶ 113-15, the plain language of the TPP Agreement clearly states that it:

> *is not a modification of the Loan Documents* and that the Loan Documents *will not be modified unless* and until (i) *I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a* [*HAMP*] *Modification Agreement*, and (iii) this Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan.

TPP Agreement, *Id.* pp. 1-3 (emphasis added).

Not only has Stovall failed to allege that she received a fully executed copy of the TPP Agreement prior to the Modification Effective Date, the clear language of the TPP Agreement belies her assertion that "the language of the TPP Agreement itself, together with SunTrust's initial finding of HAMP eligibility on which the tender of the TPP Agreement is based, and SunTrust's failure to tender a timely denial combine to create [an] entitlement . . . to a permanent loan modification." Pl.'s Opp'n at 12-13, ECF No. 21. Put simply, Stovall's conclusory assertion that SunTrust breached the TPP Agreement by failing to extend a permanent loan modification to Stovall is completely eviscerated by the fact that she never received a fully executed copy of the document, and was ultimately sent "a letter . . . informing her that she had been denied for a loan modification." Am. Compl. ¶ 70. The fact that she claims the letter itself did not comply with the HAMP guidelines is of no matter as she is precluded from bringing a private right of action to enforce the HAMP guidelines. Therefore, "like the majority of courts which have decided this issue, this Court finds that Plaintiff has not alleged an actual breach of the purported contract." *Bourdelais*, 2011 WL 1306311, at *5 (collecting cases dismissing breach of contract claims where TPP Agreements did not guarantee permanent loan modification).

### 5. Count Five: Promissory Estoppel

In Count Five, Stovall brings a claim for promissory estoppel as an alternative to her breach of contract claim. Under Maryland law, the elements of a claim for promissory estoppel are: (1) a clear and definite promise by the defendant; (2) a reasonable expectation by the defendant that the promise will induce action or forbearance by the plaintiff; (3) the

promise does induce actual and reasonable action or forbearance by the plaintiff; and (4) a resulting detriment to the plaintiff that can only be avoided by enforcement of the promise. *Holland v. Psychological Assessment Resources, Inc.*, No. CCB-04-437, 2004 WL 1368873, at *3 (D. Md. June 16, 2004) (citing *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 531-32 (Md. 1996)).

Essentially, Stovall argues that SunTrust, through its "clear and definite TPP Agreements, made representations to Plaintiffs that if they returned the TPP Agreements executed and with supporting documentation, and made their TPP payments, they would receive permanent HAMP modifications." Am. Compl. ¶ 127. Furthermore, in her opposition, Stovall argues that because she "made her timely payments and provided all documentation that was requested, SunTrust was obligated to convert her TPP to a permanent modification under the Fannie Mae [HAMP] guidelines." Pl.'s Opp'n at 41. However, aside from Stovall's conclusory allegations, the only thing "clear and definite" about the TPP Agreement was that it was *not* a promise to permanently modify the Loan. By its own language, the TPP Agreement "will not take effect unless and until both the Lender and [the borrower] sign it and the Lender provides [borrower] with a copy of this Plan with the Lender's signature." TPP Agreement p. 1. Moreover, the TPP Agreement makes clear that the "Trial Period Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until [the borrower meets all of the conditions required for modification, receives a fully executed copy of the TPP Agreement, and the effective date has passed]." *Id.* at 1-3. Therefore, as to the first prong of the promissory estoppel analysis, Stovall has failed to plead a colorable claim insofar as she cannot articulate

that a clear and definite promise was made by SunTrust.  Accordingly, SunTrust's Motion to Dismiss is granted as to Count Five.

### 6.  Count Six: Declaratory and Injunctive Relief

In Count Six, Stovall seeks declaratory and injunctive relief.  Because Stovall has adequately pled in Count Three a cause of action arising under the Maryland Mortgage Fraud Protection Act, there remains a cause of action on which to seek the relief requested.  *See Fare Deals, Ltd. V. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) (noting that "a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts.").  Accordingly, Defendant's Motion to Dismiss is denied as to Count Six.

CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 20) is GRANTED IN PART and DENIED IN PART.  Specifically, it is GRANTED with respect to Counts One, Two, Four, and Five, and DENIED with respect to Counts Three and Six.  Plaintiff's Motion to Strike Offer of Judgment (ECF No. 22) is DENIED; and Plaintiff's Motion for Leave to File Supplement (ECF No. 38) is GRANTED.

A separate Order follows.

Dated:        September 20, 2011                    /s/_____
                                                    Richard D. Bennett
                                                    United States District Judge