IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VALARIE STOVALL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-10-2836 |
| SUNTRUST MORTGAGE, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Pending before the Court is Defendant SunTrust Mortgage, Inc.'s ("Defendant" or "SunTrust") Motion to Dismiss Remaining Counts III and VI of the Amended Class Action Complaint ("Complaint") of Plaintiff Valarie Stovall ("Stovall") pursuant to Rules 12(b)(1), 12(c), and 12(h)(3) of the Federal Rules of Civil Procedure. (ECF No. 44). Stovall originally filed the putative class action in the Circuit Court for Baltimore City on September 3, 2010, asserting claims arising out of the denial of Stovall's mortgage loan modification application and a foreclosure action that was ultimately rescinded. Specifically, Plaintiff's claims stem from SunTrust's alleged failure to abide by the provisions set forth in the United States Department of the Treasury's Home Affordable Modification Program.[1] In a previous Memorandum Opinion and Order, this Court held that Counts One, Two, Four, and Five of the Complaint, alleging violations of Maryland's Consumer Protection Act, Maryland's Consumer Debt Collection Act,

---

[1] The Home Affordable Modification Program ("HAMP"), 12 U.S.C. §§ 5219A-B, is part of the Emergency Economic Stabilization Act, 12 U.S.C. §§ 5201 *et seq.* The background and purpose of the HAMP program is thoroughly described in *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at \*1 (D. Md. Aug. 4, 2011), a recent opinion issued by this Court. In short, the Treasury Department established HAMP to help "at-risk homeowners" avoid foreclosure by reducing their monthly mortgage payments to a sustainable amount. *Id.*

and various common law causes of action, all failed to state a cause of action on which relief may be granted. They were subsequently dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Mem. Op. 2, ECF No. 41. This Court did not dismiss Count Three, which alleges a violation of the Maryland Mortgage Fraud Protection Act ("MMFPA"), finding Stovall's allegations regarding SunTrust's substitute trustee's use of fraudulent affidavits sufficient to plead a plausible violation of the MMFPA. *Id.* at 18. Because this Court found that Stovall adequately pled in Count Three a cause of action arising under the MMFPA, Count Six, seeking declaratory and injunctive relief, was likewise not dismissed as there remained a cause of action on which to seek the requested relief. *Id.* at 23. Discovery having now been completed, SunTrust moves this Court to dismiss the remaining Counts Three and Six for lack of subject matter jurisdiction. This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). This Court concludes that Stovall lacks standing to bring this action insofar as there exists no case or controversy, and any alleged injury suffered by Stovall is not fairly traceable to any action on the part of SunTrust. Accordingly, for the reasons that follow, SunTrust's Motion to Dismiss Remaining Counts III and VI (ECF No. 44) is GRANTED.

BACKGROUND

Plaintiff's Complaint stems from a failed loan modification application and subsequent foreclosure action instituted against her. Stovall is the owner of the residence located at 16831 Cavalry Drive, Williamsport, Maryland 21795. Am. Compl. ¶ 12, ECF No. 19. The mortgage loan (the "Loan") at issue is secured by a lien on the property, and is owned by the Federal National Mortgage Association ("Fannie Mae"). The Loan was evidenced by a Note and secured by a Deed of Trust. *See* Def.'s Mot. Dismiss, Exs. 1 (Note) and 2 (Deed of Trust). Although the

Loan is owned by Fannie Mae, it is currently serviced by Defendant SunTrust Mortgage, Inc. ("SunTrust"). Am. Compl. ¶ 41.

In August of 2009, Stovall began struggling to pay her mortgage payments and became delinquent on the Loan. *Id.* Shortly thereafter, Stovall contacted SunTrust and sought a loan modification under the Home Affordable Modification Program[2]. *Id.* SunTrust requested, and Stovall sent documentation regarding her income and expenses to SunTrust for evaluation under HAMP. *Id.* As recently explained by this Court,

> [t]he HAMP loan modification process occurs in two steps. First, the mortgage servicer determines whether the borrower is eligible to participate in HAMP. If a mortgage servicer determines that the borrower is eligible for HAMP, the servicer may offer the borrower a three-month Trial Period Plan ("TPP"), during which the borrower pays reduced mortgage payments. If all of the conditions of the TPP Agreement are satisfied, the borrower may then proceed to step two of the process, at which point he or she is offered a permanent loan modification.

*Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *1 (D. Md. Aug. 4, 2011). Stovall claims that she received approval to enter the HAMP program which indicated that she had been approved to enter into a TPP plan on April 7, 2010. Am. Compl. ¶ 42. Specifically, Stovall alleges that she "entered into a contractual agreement for a TPP with SunTrust." *Id.* at ¶ 44. While Plaintiff has not attached a copy of the TPP to her Amended Complaint, SunTrust included a copy signed only by Stovall as Exhibit 3 to its Motion to Dismiss, and Stovall does not allege that she ever received a signed executed copy of the agreement from SunTrust. *See* Def.'s Mot. Dismiss, Ex. 3, ECF No. 20-4. As the very top of the document makes clear, the "contractual agreement" signed by Stovall is only "Step One of Two-Step Documentation

---

[2] As described in *supra* note 1, the Home Affordable Modification Program ("HAMP"), 12 U.S.C. §§ 5219A-B, is part of the Emergency Economic Stabilization Act, 12 U.S.C. §§ 5201 *et seq*.

3

Process." *Id.* at 1. Moreover, of particular importance to this litigation, the TPP Agreement contains the following language:

> I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. *This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.* . . .
>
> The Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, *but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates,* and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. . . .
>
> *I understand that this Trial Period Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until* (i) I meet all of the conditions required for modification, (ii) *I receive a fully executed copy of a Modification Agreement,* and (iii) this Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan.

*Id.* pp. 1-3 (emphasis added).

Apparently without receiving a fully executed copy of the TPP Agreement, Stovall nevertheless began making reduced monthly mortgage payments to SunTrust in April and May of 2010. Am. Compl. ¶¶ 44-45. After making her second payment, Stovall learned that SunTrust authorized substitute trustees Howard Bierman, Jacob Geesing, and Carrie Ward (collectively, "the Trustees") to institute a foreclosure proceeding against her in the Circuit Court of Washington County, Maryland. *Id.* at ¶ 46. In the state court action, the Trustees allegedly "filed numerous papers and other documents . . . which purportedly contained the signature of a [Trustee] but in fact did not contain such a signature." *Id.* at ¶ 48. Rather, "the papers contained an alleged bogus signature of the purported signer from [the Trustees]." *Id.* Upon learning of

the impending foreclosure action, Stovall contacted the Trustees and was told that "as long as [she] was under the modification program an order for reinstatement would be sent by SunTrust and upon approval of modification[, the Trustees] would cancel the foreclosure." *Id.* at ¶ 46.

Between May 17, 2010 and June 28, 2010, Stovall claims that she called SunTrust "numerous times and was told by each representative she spoke to 'not to worry' and when she got a [foreclosure] sale date to call [SunTrust] . . . and SunTrust would stop any foreclosure sale, since [Stovall] was in the TPP." *Id.* at ¶ 54. On June 28, 2010, Stovall learned that a foreclosure sale had been scheduled for July 9, 2010. *Id.* at ¶ 56. On that same day, Stovall again contacted SunTrust and was told that SunTrust "would make a note to [Stovall's] file and that they were still reviewing [her] application [for loan modification] and SunTrust would set aside the foreclosure." *Id.* at ¶ 57.

On July 6, 2010, Stovall received a telephone call from a SunTrust representative requesting additional documentation in connection with SunTrust's first step TPP Agreement review. *Id.* at ¶ 58. Thereafter, Stovall faxed SunTrust the requested information. *Id.* Stovall did not hear back from SunTrust until after the July 9, 2010 foreclosure sale had occurred and she received an eviction notice. *Id.* at ¶ 59. On July 14, 2010, Stovall called SunTrust and was told that her request to put off the foreclosure sale was denied.

In response to the foreclosure sale, Stovall retained counsel and filed exceptions to the sale. *Id.* at ¶ 63. In response, SunTrust moved to rescind the foreclosure sale but did not immediately dismiss the foreclosure action in the Circuit Court of Washington County. *Id.* at ¶ 64. SunTrust eventually did move to dismiss the state court action—a request that was granted on December 3, 2010. *Id.* at ¶ 68.

Although in one paragraph of her Amended Complaint Stovall claims that she "never received anything in writing from SunTrust that she was denied her permanent HAMP modification," *id.* at ¶ 61, she later acknowledges that on January 8, 2011, she received "a letter . . . informing her that she had been denied for a loan modification" under HAMP, *id.* at ¶ 70. Stovall claims that the denial letter failed to comply with Fannie Mae's HAMP servicing guidelines. *Id.* at ¶ 71.

Stovall filed this action against SunTrust on September 3, 2010 in the Circuit Court for Baltimore City, Maryland. SunTrust removed the case to this Court on September 13, 2010, based on diversity jurisdiction. Stovall filed an Amended Class Action Complaint on January 19, 2011, and Defendant filed a motion to dismiss on February 14, 2011, which this Court granted in part and denied in part. Mem. Op. 2. In Counts One through Four, Stovall alleges that SunTrust (1) violated Maryland's Consumer Debt Collection Act by engaging in unfair and deceptive trade practices, making misrepresentations, and failing to disclose material facts relating to Plaintiff's HAMP application; (2) violated Maryland's Consumer Debt Collection Act by filing debt collection foreclosure proceedings without complying with the prerequisites of the Fannie Mae HAMP program and by relying on bogus and insufficient documents submitted by the Trustees; (3) violated the MMFPA by making misstatements, misrepresentations, and omissions during the mortgage lending process; and (4) breached the TPP Agreement by instituting foreclosure proceedings against borrowers under consideration for TPP loan modifications and by authorizing foreclosure sales prior to sending written denials of loan modification. Am. Compl. 25-35.

In the prior motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court dismissed Counts One, Two, Four, and Five, which constituted the alleged

violations of Maryland's Consumer Protection Act, Maryland's Consumer Debt Collection Act, and various common law causes of action, for failure to state a cause of action on which relief may be granted. Mem. Op. 2. This Court did not dismiss Count Three, which alleges a violation of the MMFPA, because Stovall's allegations regarding Sun Trust's substitute trustees' use of fraudulent affidavits were found to be sufficient to plead a plausible violation of the MMFPA. *Id.* at 18. Because Stovall adequately pled a cause of action arising under the MMFPA in Count Three, this Court did not dismiss Count Six, which seeks declaratory and injunctive relief for the MMFPA violations in Count Three. *Id.* at 23.

On April 24, 2012, Defendant filed the pending motion to dismiss the remaining Counts Three and Six for lack of subject matter jurisdiction pursuant to Rules 12(b)(1), 12(c), and 12(h)(3) of the Federal Rules of Civil Procedure. Def.'s Mot. Dismiss Remaining Counts 1-2. Specifically, Defendant claims Stovall does not allege a specific injury that she suffered as a result of the manner in which the Trustees signed foreclosure papers, and any injury that she did suffer as a result of the Trustees' actions is not fairly traceable to SunTrust. *Id.* at 2

## STANDARD OF REVIEW

SunTrust moves to dismiss Plaintiff's remaining claims for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure due to lack of standing. Def.'s Mot. Dismiss Remaining Counts 2. Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure and challenge a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Under Rule 12(b)(1), if a party lacks standing the court automatically lacks subject matter

jurisdiction. *See Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009). Additionally, if at any time the court determines it does not have subject matter jurisdiction, it must dismiss the claim. *See* Fed. R. Civ. P. 12(h)(3).

Article III of the United States Constitution limits federal courts to "adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing doctrine identifies disputes that are appropriately justiciable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This doctrine "functions to ensure... that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). To meet the constitutional standing requirements, a plaintiff bears the burden of illustrating that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc.*, 528 U.S. at 180-81 (quoting *Lujan*, 504 U.S. at 560-61). Thus, a federal court can act only to "redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

In determining the establishment of these three elements of Article III standing, this Court focuses "on the party asserting the claim and 'not the issue the party wishes to have adjudicated.'" *Doe v. Obama*, 670 F. Supp. 2d 435, 439 (D. Md. 2009) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)). At this stage, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) [of the Federal Rules of Civil Procedure] and assume the truthfulness of the facts alleged." *Kent v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). However,

although this Court "must take all the factual allegations in the complaint as true, [it] is not bound to accept as true legal conclusions couched as factual allegations." *Obama*, 670 F. Supp. 2d at 438 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

## ANALYSIS

SunTrust urges this Court to dismiss Stovall's remaining Counts Three and Six because Stovall does not have standing to pursue Count Three's Maryland Mortgage Fraud Protection Act ("MMFPA") claim and her related request for declaratory and injunctive relief contained in Count Six. Def.'s Mot. Dismiss Remaining Counts 4. Specifically, SunTrust argues that Stovall lacks standing to bring this action because she fails to allege a specific harm caused by SunTrust, and that if Stovall suffered any harm at all, that harm is not fairly traceable to any actions on the part of SunTrust. *Id.* Stovall, on the other hand, contends that she has standing to pursue her MMFPA claim and her related request for relief. First, she argues that the TPP payments she made constitute an injury attributable to SunTrust. Pl.'s Opp'n 6, ECF No. 50. Additionally, Stovall argues that harm caused by Howard Bierman, Jacob Geesing, and Carrie Ward's (collectively, "the Trustees") foreclosure-related acts is an injury fairly traceable to SunTrust because, at all relevant times, the Trustees was acting as SunTrust's agent. *Id.* at 7-9. For the following reasons, Stovall has not met her burden in establishing standing to pursue Count Three and Six of the Amended Complaint.

**I.     Stovall's TPP Payments Do Not Constitute Injury for the Purpose of Standing Doctrine.**

Stovall first contends that her TPP payments suffice to establish standing because they constitute a concrete injury fairly attributable to SunTrust. *Id.* at 6. Specifically, Stovall maintains that the TPP payments injured her because making payments "on a mortgage that

would ultimately be foreclosed upon is an injury in and of itself." *Id.* These payments, however, are insufficient in establishing a cognizable injury.

This Court addressed a similar set of facts in *Casey v. Litton Loan Servicing LP*, No. 11-0787, 2012 U.S. Dist. LEXIS 18076 (D. Md. Feb. 14, 2012). There, the issue confronting this Court was whether borrowers in default had standing to bring a cause of action against the servicer of their mortgage for the alleged "robo-signing" of documents perpetrated by the substitute trustees. *Id.* at 12. This Court reasoned the plaintiffs failed to demonstrate a concrete injury because, among other reasons, the state court foreclosure action "at the heart of this case was dismissed by the foreclosure trustee...*before* the Plaintiffs instituted this action". *Id.* at 12-13. Similarly, prior to the filing of Stovall's Amended Complaint,[3] the Circuit Court of Washington County dismissed the foreclosure action. Am. Compl. ¶ 68. Therefore, Stovall's argument that the TPP payments constitute an injury is insufficient because the state court dismissed the foreclosure action initiated against here – which here, too, is "at the heart of this case" – prior to her filing of the Amended Complaint. 2012 U.S. Dist. LEXIS 18076 at *12. Thus, her allegation of injury, which necessarily relies on there being a foreclosure proceeding, must fail.

Stovall next claims that the TPP payments constitute an injury in fact that is traceable to SunTrust because Stovall made them in reliance upon SunTrust's deceptive and misleading statements that there would be no foreclosure sale. Pl.'s Opp'n 6-7. Even if the TPP payments were sufficient to establish an "injury in fact," SunTrust's allegedly fraudulent statements cannot be the "challenged action of the defendant" to which the injury is traceable. *Friends of the*

---

[3] Stovall filed her original complaint, which did not include allegations against the Trustees, prior to the state court's dismissal of the foreclosure action. Compl., ECF No. 2. She filed the Amended Complaint, which contained the first allegations regarding the Trustees' conduct, after the dismissal of the foreclosure proceedings. Am. Compl.

*Earth, Inc.*, 528 U.S. at 180-81 (quoting *Lujan*, 504 U.S. at 560-61).  In the earlier Memorandum Opinion[4], this Court dismissed statutory claims relating to allegedly untruthful statements made by SunTrust, finding that Stovall "failed to adequately plead with particularity any facts tending to show that SunTrust made false or misleading statements in connection to Stovall's loan modification application."  Mem. Op. 18.  Because this Court already concluded that Stovall's Amended Complaint does not plead facts sufficient to establish that SunTrust acted fraudulently, Stovall cannot now rely on those alleged misstatements as the action that caused her harm.

Rather, this Court allowed Count Three and Six to proceed on the narrow grounds that Stovall's "allegations regarding SunTrust's substitute trustee's use of fraudulent affidavits is sufficient to plead a plausible violation of the MMFPA."  Mem. Op. 18.  Therefore, the remaining causes of action only pertain to the conduct of the Trustees.  *See id.* at 18 (allowing the allegations regarding the Trustees mishandling various documents pertaining to the foreclosure sale sufficient to plead a violation of the MMFPA).

In conclusion, the TPP payments cannot constitute an injury traceable to SunTrust. First, the state court dismissed the foreclosure proceedings, which are at the heart of her claim that the TPP payments constitute an injury. Second, SunTrust did not fraudulently induce Stovall into making the TPP payments, so any injury arising out of those payments could not be traceable to SunTrust.

**II.    The Trustees' Actions Do Not Constitute Injury for the Purpose of Standing Doctrine.**

Because SunTrust's direct conduct in inducing Stovall to make payments under the TPP is not at issue and the TPP payments do not constitute an injury, the critical question becomes whether the Trustees' allegedly unlawful foreclosure-related acts harmed Stovall in a concrete

---

[4] ECF No. 41.

and particular way, and if so, whether that harm is fairly traceable to SunTrust. *See Lujan*, 504 U.S. at 560-61 (explaining that to establish standing, one must suffer an actual or imminent, concrete and particular injury that is fairly traceable to the defendant, which is likely to be redressed by a favorable decision).

To establish standing, Stovall claims that SunTrust is liable for the Trustees' alleged filing and notarization of various documents with deliberate misstatements as to the documents' true signatories because, at all relevant times, the Trustees was acting as SunTrust's agent. *See* Pl.'s Opp'n 7-9. However, this Court does not need to address the issue of whether SunTrust is liable for the manner in which the Trustees affixed signatures to foreclosure documents because Stovall has not made an adequate showing that she suffered an injury due to the Trustees' practice. *See Allen v. Wright*, 468 U.S. 737, 750 (1984) (requiring a plaintiff to allege personal injury fairly traceable to the allegedly unlawful conduct in order to establish standing).

Any injury suffered by Stovall is a result of falling delinquent on her loan rather than by the manner in which the Trustees affixed its signatures to the foreclosure documents. In *Casey*, an analogous case decided by this Court only nine months ago,[5] this Court dismissed the plaintiffs' Maryland Mortgage Fraud Protection Act claim and other statutory claims for lack of standing, finding the plaintiffs did not make a plausible showing that they suffered a concrete injury traceable to the defendant mortgage servicer. 2012 U.S. Dist. LEXIS 18076 at *2. More specifically, the Court found that, "to the extent [the Plaintiffs'] suffered some injury, that injury

---

[5]*Casey v. Litton Loan Servicing LP*, No. 11-0787, 2012 U.S. Dist. LEXIS 18076 (D. Md. Feb. 14, 2012). In *Casey*, as is the case here, the defendant mortgage loan servicer authorized substitute trustees to institute a foreclosure action against the plaintiff borrower in default. *Id.* at *3-4. The substitute trustees, Howard Bierman, Jacob Geesing, and Carrie Ward, who are the same substitute trustees involved in the present action, allegedly filed and had notarized foreclosure-related documents that Jacob Geesing did not sign but that purported to contain his signature. *Id.* at *4-5.

was a result of the Plaintiffs' own failure to keep current on their mortgage, and not on the allegedly 'bogus' documents filed by [the substitute trustees] in the course of the dismissed foreclosure proceeding." *Id.* at *12-13.

Stovall tries to distinguish *Casey* by arguing that this Court resolved the plaintiffs' standing issue without analyzing the agency relationship between the mortgage servicer and the substitute trustees. Pl.'s Opp'n 7. While it is true that *Casey* did not address the issue of principal-agent liability between mortgage servicers and substitute trustees, that point is immaterial as the Trustees' allegedly fraudulent affidavits and foreclosure documents did not injure Stovall. Just, as the Court reasoned in *Casey*, Stovall's claimed harm to her credit score cannot accurately be traced to the "robo-signed" foreclosure documents. 2012 U.S. Dist. LEXIS 18076 at 13. The direct cause of Stovall's harm to her credit was her defaulting on the mortgage. *Id.* For this reason, Stovall fails to allege any concrete and particularized "injury in fact." Thus, even assuming the SunTrust is liable for the actions of the Trustees, Stovall does not establish standing because she was not injured by the Trustees' actions. *Lujan*, 504 U.S. at 560-61.

In sum, the Amended Complaint fails to allege any concrete and particularized injury either from the TPP payments themselves or from the manner in which the Trustees affixed its signatures to the foreclosure-related documents. Because Stovall does not adequately plead an injury in fact relating to Counts Three and Six, Stovall has not met her burden in establishing standing to bring a cause of action and this Court thereby lacks subject matter jurisdiction over the remaining Counts of Stovall's Amended Complaint.

## CONCLUSION

For the reasons stated above, SunTrust's Motion to Dismiss Remaining Counts III and VI (ECF No. 44) of the Plaintiff's Amended Complaint is GRANTED.

A separate Order follows.

Dated: November 20, 2012.

                                                /s/_____
                                                Richard D. Bennett
                                                United States District Judge